# EXHIBIT 5



Affiliated with: The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Life Insurance Company

A subsidiary of The Cincinnati Insurance Company

**John Lucas**
Associate Manager CSU

June 28, 2023

**Via email (mark@thegoodheartfirm.com) and First-Class Mail**
Mark B. Goodheart, Esq.
THE GOODHEART FIRM, P.C.
529 South 16th Street, Suite 100
Philadelphia, PA  19146

> Re:   *Alba, et al. v. 15th Street Lighthouse, L.P., et al.*, Court of Common Pleas of Philadelphia County, PA, May 2023 Term No. 01890
> Named Insured:  RM Development Partners
> Claim No.: 4132143
> Policy No.: CSU0170364

Dear Mr. Goodheart:

This letter is being sent on behalf of The Cincinnati Insurance Specialty Underwriters Insurance Company's ("Cincinnati") in response to your June 6, 2023 letter to The Plexis Group, LLC tendering the defense and indemnity of your clients, PIP Property Management ("PIP") and JBMP Group, LLC, in the above-referenced Underlying Action to 15th Street Lighthouse, L.P. ("15th Street") and its general liability carrier.  Although your tender letter refers to "JBMP Group, LLC", that entity is not named in the Underlying Action.  The Underlying Action names "JBMP Real Estate Group LLC d/b/a JBMP Group".  As such, we have assumed that you are requesting a defense of that entity, referred to herein as "JBMP".

The Cincinnati Policy issued to RM Development Partners ("RM") was issued by Cincinnati, a non-admitted carrier; however, as an employee of The Cincinnati Insurance Company I am authorized to handle this claim.

Please note that Cincinnati is only responding to the tender to the general liability carrier.  Cincinnati is <u>not</u> responding to the tender made directly to 15th Street.  Cincinnati will defer to 15th Street and/or its counsel to response to that portion of your tender.

We are writing to you as the person responsible for receiving coverage-related communications on behalf of PIP and JBMP.  Please provide a copy of this letter to PIP and JBMP.  **If you are not so authorized, please let us know and provide the name and contact information for the appropriate person.**

Mailing Address: P.O. Box 145496 • Cincinnati, Ohio 45250-5496 ▪ Headquarters: 6200 S. Gilmore Road • Fairfield, Ohio 45014-5141
John_lucas@CinFin.com ▪ 513-870-2045

Cincinnati issued an insurance policy to first named insured, RM Development Partners ("RM"), providing certain commercial general liability coverage, and bearing policy number CSU0170364, for the period effective June 15, 2022 to June 15, 2023 and later cancelled effective November 15, 2022 (the "Cincinnati Policy"). As such, on behalf of Cincinnati, this letter addresses the coverage obligations, if any, under the Cincinnati Policy owed to PIP and/or JBMP in connection with action captioned, *Isabella Alba, et al. vs. 15th Street Lighthouse L.P., et al.*, which is currently pending in the Court of Common Pleas of Philadelphia County, May 2023, No. 01890, (the "Underlying Action").

Please be advised that despite Cincinnati's belief that it does not owe any coverage to PIP or JBMP for the Underlying Action (as discussed below), **Cincinnati offers to provide a defense to PIP and JBMP in the Underlying Action, subject to a complete reservation of rights** as set forth in detail below – including but not limited to the right to deny coverage, withdraw from the defense, seek reimbursement of all defense costs as permitted by the below described Pennsylvania Defense Cost endorsement, and/or file a declaratory judgment action seeking a determination that Cincinnati has not duty to defend or indemnify, may withdraw from the defense of PIP and/or JBMP, and may obtain reimbursement of all defense costs incurred or paid on behalf of PIP and/or JBMP.

Unless you reject this offer to defend, Cincinnati has retained the following defense counsel to represent and protect the interests of PIP and JBMP in the Underlying Action:

Andrew R. Benedict, Esq.
BBC Law, LLP
2005 Market Street, Suite 1940, Philadelphia, PA, 19103
bbclawfirm.com | Main: 215-977-4133 | Fax: 866-368-5234

Defense counsel shown above will contact PIP and JBMP in the near future. Should PIP and JBMP accept Cincinnati's offer to defend, we request that they provide the assigned defense counsel with their full cooperation. Please feel free to contact defense counsel directly with any questions.

In addition to the counsel assigned by Cincinnati, PIP and JBMP are entitled to retain their own counsel, at their own expense, to work with assigned defense counsel, for the purpose of protecting against any liability that may not be covered by the Cincinnati Policy (including any uncovered damages or liability in excess of the Cincinnati Policy limits).

Cincinnati's defense of PIP and JBMP in the Underlying Action is subject to a full and complete reservation of all of Cincinnati's rights and defenses, including the right to deny or limit coverage (both defense and indemnity) to PIP and JBMP under the Cincinnati Policy (and any other applicable policy) with respect to the claims and damages alleged in the Underlying Action. Among other things, Cincinnati reserves the right to file a declaratory judgment action, or other claim, seeking declaratory relief in order to obtain a declaration of the rights and obligations, if any, of Cincinnati under the Cincinnati Policy. Cincinnati reserves the right to withdraw its defense upon a determination that it does not owe PIP and JBMP a duty to defend, as well as the right to seek reimbursement from them or any other insured of any defense costs incurred or paid in connection with their defense. Also, should the Underlying Action proceed to trial, it may be necessary to seek an allocated decision/verdict through the use of a special verdict sheet to identify what portion of the verdict (and resulting judgment), if any, is allocable to damages that are not covered by the Cincinnati Policy. In addition, special interrogatories may be necessary to resolve factual issues that affect the availability of coverage under the Cincinnati Policy. Cincinnati reserves all rights in connection with pursuing a special verdict sheet, special interrogatories, and/or other proceedings to achieve these objectives.

Below is a discussion of Cincinnati's reservation of rights. If you have any questions or believe this discussion to be incomplete or incorrect, please let us know as soon as possible. Similarly, if you disagree with any statements set forth below, or have any additional information or material that you would like Cincinnati to consider, please let us know.

Additionally, Cincinnati continues to investigate the Underlying Action, and requests your assistance in gathering additional information in order to comprehensively evaluate this claim. To this end, **we have included in bold and underline below certain questions related to our ongoing investigation, and request that you provide a response to the same as soon as possible.**

## I.  FACTUAL BACKGROUND

On or about May 17, 2023, the Kline & Specter P.C. firm filed a Complaint on behalf of eleven plaintiffs in the Philadelphia County, Pennsylvania Court of Common Pleas. The plaintiffs are Isabella Alba, Morgan Black, Nina Carsello, Autumn Dinenna, Dylan Giandonato, Kaelin Iwugo, Emma Janosczyk, Josie Lemon, Jake Ridall, Helen Tormollan and Myla Vetterlein (collectively, "Plaintiffs). As explained in the Complaint,

> In the early morning hours of November 11, 2022, two masked intruders entered through a broken gate at the premises of 1330 North 15th Street, Philadelphia, Pennsylvania and proceeded to invade an apartment where eleven Temple University students slept. The eleven young students were held hostage at gunpoint for over an hour and a half. As a result of Defendants' negligent maintenance, operation, ownership, and construction of the premises, Plaintiffs have suffered and will in the future continue to suffer anxiety attacks, panic attacks, fear, anger, shock, depression, shame, guilt, nightmares, difficulty sleeping, and emotional and psychological injures derived from this horrific experience. The emotional distress will have long lasting implications on Plaintiffs' quality and enjoyment of life.

Based on these allegations, and the others detailed in the Complaint, the Plaintiffs assert a single Count for Negligence against the four defendants, 15th Street Lighthouse, LP, CTW International Holding, LLC, JBMP Real Estate Group, LLC d/b/a/ JBMP Group, and PIP Property Management, LLC, d/b/a Princeton International Properties, Inc. (collectively, "Defendants"). Each of the Defendants is alleged to have owned, operated, leased, managed and/or controlled the premises located at 1330 North 15th Street, Unit D, Philadelphia, Pennsylvania 19121 (the "Premises").

The Complaint alleges, in detail, how the two intruders gained access to the Premises, what they did, and what damages/injuries the Plaintiffs allege. As you have the Complaint, we do not detail all of the allegations here.

As to damages, the Complaint alleges that "[t]he intruders held the eleven Plaintiffs hostage at gun and knife point for over an hour and a half while they demanded money, cell phones, debit and credit cards, laptops, and car keys." Complaint at para. 69. The Complaint also avers that "[a]s a direct and proximate result of the negligence of all Defendants, jointly and severally, and their agents, servants and/or employees who were responsible for providing property management services, leasing services, development services, and/or repair services on or before November 11, 2022, Plaintiffs suffered injuries and will in the future suffer injuries including the following: a) anxiety; b) panic attacks; c) humiliation; d) extreme fear; e) shock; f) depression; g) shame; h) guilt; i) anger; j) nightmares; k) flashbacks; l) sleep disturbances; m) hypervigilance; n) inability to concentrate; o)

pain and suffering; p) mental anguish; q) loss of enjoyment of life's pleasures; and r) emotional and psychological trauma." Complaint at para. 146.

For relief, the Plaintiffs seek "damages against all Defendants, jointly and severally, for sums in an amount in excess of local prevailing arbitration limits, exclusive of pre-judgment interest, post judgment interest, and costs."

## II.     THE CINCINNATI POLICY

The Cincinnati Specialty Underwriters Insurance Company issued a commercial general liability policy (the "Cincinnati Policy") to its first named insured, RM Development Partners, bearing policy number CSU0170364. The Policy initially was effective for the period June 15, 2022 to June 15, 2023; however, the Policy was cancelled effective November 15, 2022. The Cincinnati Policy provides certain coverage subject to a $1,000,000 each occurrence limit, a $2,000,000 general aggregate limit, and a $2,000,000 products completed operations aggregate limit. Coverage is also subject to a $2,500.00 per occurrence deductible applicable to bodily injury liability and/or property damage liability combined. Defense costs and expenses are subject to the deductible.

## III.    COVERAGE DETERMINATION

### A.     PIP Property Management and JBMP Group, LLC as Insureds

Neither PIP nor JBMP are named insureds to the Cincinnati Policy. As such, they are entitled to coverage only to the extent that they qualify as insureds to the Cincinnati Policy.

The Who Is An Insured provision to the Cincinnati Policy includes as an insured a real estate manager of the named insured. Based on the information provided, it appears that PIP acts as the real estate manager for 15th Street Lighthouse, LP with respect to the Premise at issue. **Please confirm that PIP is in fact the real estate manager – and for whom.**

The Cincinnati Policy contains a named insured endorsement that extends the named insured to include a number of additional expressly identified named insureds. One of those additional named insureds is "15th Street Lighthouse, LLC". Note that this refers to an LLC, not to an LP as identified in the underlying Complaint or as the Owner in the contract with PIP. Cincinnati reserves the right to deny coverage to PIP as a real estate manager to the extent that PIP was not in fact a real estate manager for any named insured to the Cincinnati Policy.

The Cincinnati Policy also contains an additional insured - managers or lessors of premises endorsement (form CG 20 11 12 19) which identifies the additional insured as "JBMP Group & PIP Property Management" and identifies the designation of premises, part leased to you as "all locations per locations schedule excluding 1710 Cambridge Street". The Premise where this incident occurred is listed on the location schedule as location number 2. The additional insured endorsement further provides that:

> A.  Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by you or those acting on your behalf in connection with the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on be-half of the person(s) or organization(s) shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contractor agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to Section III – Limits Of Insurance:

If coverage provided to the additional insured is required by a contractor agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

The endorsement is limited to ownership, maintenance or use of "that part of the premises leased to you", with the term "you" referring to the named insured. Presently, it is not clear whether any Cincinnati named insured leased the premises at issue. However, at this point in time, given that PIP and a JBMP entity (albeit not necessarily the same as that listed in the underlying Complaint) are expressly listed as additional insureds on this endorsement (to the extent such endorsement provides coverage to them) and that the Premise is a scheduled location, Cincinnati shall recognize PIP and JBMP as potential insureds – while reserving all rights to deny coverage (and seek reimbursement) to the extent that PIP and/or JBMP do not qualify as additional insureds under this endorsement, and/or to the extent that that JBMP entity named in the endorsement is not the same as the entity named as a defendant in the Underlying Action.

Please let us know whether "JBMP Group, LLC", "JBMP Group", and "JBMP Real Estate Group LLC" exist and, if so, advise which (if any) had any involvement with the property in question.

### B.      Coverage A – Bodily Injury And Property Damage Liability

The Cincinnati Policy provides certain coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. Cincinnati has the right and duty to defend the insured against any "suit" seeking

those damages. However, Cincinnati does not have a duty to defend against any suit seeking damages to which the insurance does not apply.

The Insuring Agreement to Coverage A, as amended by the LIMITATION OF COVERAGE TO DESIGNATED PREMISES endorsement, provides in part:

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the premises designated in the CSGA403 Commercial General Liability Premises Schedule.
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period; and

The Cincinnati Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from, any of these at any time."

The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions".

The Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Assuming that PIP and JBMP are insureds, Cincinnati recognizes that the Underlying Action potentially alleges injury and/or damage that fall within the Insuring Agreement. That, however, does not mean that Cincinnati owes any coverage. **One or more of the exclusions discussed below appear to preclude any coverage to PIP or JBMP.** Nonetheless, at this point in time, as PIP and JBMP have tendered their defense to Cincinnati and thereby asked Cincinnati to defend, **Cincinnati offers to defend them – subject to this reservation of rights**.

**However, as PIP and JBMP may not have reviewed the Cincinnati Policy prior to your tender, Cincinnati asks that PIP and JBMP review this letter – and in particular the Assault or Battery Exclusion discussed below – and advise us whether, in light of this information, PIP and/or JBMP are willing to withdraw their tender to Cincinnati and acknowledge that the Cincinnati Policy does not provide coverage for the Underlying Action.**

Should PIP and JBMP not withdraw their tender, Cincinnati intends to move forward with a declaratory judgment coverage action – asking a court to determine whether Cincinnati has any obligation to PIP or JBMP. If, having the benefit of the Policy provisions and exclusions cited herein, PIP and JBMP agree that they are not entitled to coverage – then it should not be necessary to seek declaratory relief as to them.

Cincinnati also reserves the right to deny coverage for any damages sought or obtained by the Plaintiffs that are not because of "bodily injury" or "property damage" as defined in the Policy. Much, if not all, of what Plaintiffs seek is for emotional distress type damages. Cincinnati reserves the right to deny coverage to the extent that any such damages do not constitute "bodily injury" as defined in the Policy. Similarly, while the Plaintiffs allege that certain of their tangible property was stolen, Cincinnati reserves the right to deny coverage to the extent that any such damages do not constitute "property damage" as defined in the Policy. For instance, to the extent that Plaintiffs' electronic devices were taken, electronic data contained therein is not tangible property and does not constitute "property damage".

    **C.**    **Assault Or Battery Exclusion Endorsement**

Cincinnati reserves all rights to deny coverage based on the Policy's Assault or Battery exclusion endorsement (form CSGA 301 02 21). That exclusion provides:

> A. The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph 2., Exclusions of SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:
>
> **Assault Or Battery**
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" that in anyway, in whole or in part, arises out of an actual, threatened or alleged:
>
> 1. Assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;
>
> 2. Failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
>
> 3. Failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or
>
> 4. Failure to render or secure medical treatment or care necessitated by any assault or battery; or
>
> 5. Negligent investigation or reporting or failure to report any assault or battery to proper authorities; or
>
> 6. Negligent:
>
>     a. Employment;

      b. Supervision;

      c. Training;

      d. Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the Assault Or Battery exclusion above.

B. For the purpose of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

C. Exclusion 2.a. of SECTION I -COVERAGES, COVERAGE A -BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted in its entirety and replaced by the following:

2. a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**Cincinnati believes that this exclusion bars all coverage – including a defense and indemnity – for the Underlying Action.** The exclusion is broadly worded – to apply not only to actual assault or battery but also to "alleged" assault or battery. The exclusion also is not limited only to those damages proximately or solely caused by an assault or battery but also to injury that "in any way, in whole or in part, arises out of" assault or battery (or the other items listed in subparts 1.- 6. of the exclusion). In Pennsylvania, the phrase "arising out of" has been construed broadly, even when used in a policy exclusion, to mean "but for" causation. As such, here, if the Plaintiffs would not have been injured but for the things listed in subparts 1.- 6. of the exclusion, then the exclusion applies. The exclusion also is not limited to assault or battery by an insured but also applies to assault or battery caused by "any other person", which would include, here, the two assailants. And, the exclusion is not limited to only assault or battery, but also includes the other things described in subparts 1.- 6. – which include the types of things expressly alleged in the Underlying Action, such as the failure of "any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery" and the "failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security … ." The Complaint alleges these very failures. In paragraph 148 of their Complaint, the Plaintiffs aver that:

    The negligence of the Defendants individually and through their agents consisted of one or more of the following:

      a) failing to exercise reasonable care to ensure that the security measures Defendants offered to tenants and guests were properly performed;

      b) failing to provide reasonable and adequate security measures for the premises;

      c) failing to exercise reasonable care in ownership of the property, specifically in providing and maintaining a functional, locked exterior gate;

      d) failing to exercise reasonable care in management of the premises, specifically in providing and maintaining a functional, locked exterior gate;

e) failing to exercise reasonable care in operating the premises, specifically in providing and maintaining a functional, locked exterior gate;

f) failing to exercise reasonable care in leasing the premises, specifically in providing and maintaining a functional, locked exterior gate;

g) failing to exercise reasonable care in construction of the property, specifically in providing a functional, locked exterior gate;

h) refusing to correct a known and verifiable defect in security;

i) failure to have sufficient lighting on the premises;

j) failure to implement functional locks on the windows;

k) failure to provide a reasonably safe premises for Plaintiffs;

l) failure to provide appropriate and sufficient repairs to the exterior gate to ensure the safety of Plaintiffs and persons similarly situated;

m) failure to hire adequate property management;

n) failure to properly train property management;

o) failure to hire adequate repair personnel;

p) failure to provide appropriate security measures;

q) failure to promptly and effectively respond to requests for repair;

r) failure to have in place policies and procedures which could have been followed and which would have ensured that repairs were promptly and adequately addressed and completed;

s) negligent selection and/or monitoring of independent contractors who provided repair services;

t) failure to inspect the property to determine the existence of dangerous conditions such as the lack of a functional, locked exterior gate;

u) failure to inspect the property to determine the existence of dangerous conditions such as the lack of functional locks on windows; and

v) failure to inspect the property to determine the existence of dangerous conditions such as the lack of lighting in the alleyway.

Cincinnati believes that any damages caused by the foregoing alleged negligence are excluded by the Assault or Battery Exclusion. But for (a) the assault or battery caused by the assailants, (b) the alleged failure of Defendants to prevent the assault or battery; and (c) the alleged failure of the Defendants to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, the Plaintiffs would not have suffered at least some, if not all, of

their alleged injuries/damages.  As such, Cincinnati reserves all rights to deny coverage, including a defense, based on this exclusion.

Cincinnati also asks PIP and JBPM to advise Cincinnati if they agree and will withdraw their tenders, or whether they continue to believe that they are entitled to coverage – in which case Cincinnati will proceed with a DJ Action.

**D.     Defense Cost Reimbursement Endorsement**

The Cincinnati policy also contains a Pennsylvania Changes - Defense Cost endorsement (form IL 01 20 10 13) which provides in part:

> B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Cincinnati reserves the right to seek reimbursement of defense costs from PIP, JBMP and any other insured to the extent provide by this endorsement.  As explained in this letter, Cincinnati reserves its right to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

**E.     Punitive Or Exemplary Damages Exclusion**

The Cincinnati Policy contains a Punitive Or Exemplary Damages Exclusion, contained on page 3 of the Changes To Commercial General Liability Coverage Form endorsement (form CSGA 401 02 13).  That exclusion, which applies to both Coverage A and Coverage B states that the insurance does not apply to:

> C. Any claim of indemnification for punitive or exemplary damages. If a suit is brought against any insured for a claim covered by this Coverage Part, seeking both compensatory and punitive or exemplary damages, we will provide a defense to such action. However, we will not have an obligation to pay for any costs, interest, or damages, attributable to punitive or exemplary damages. If state law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is added.

Cincinnati reserves the right to deny coverage for any damages preclude by this exclusion.

**F.     Habitational Exclusion**

The Cincinnati Policy also contains a Habitational Exclusion endorsement (form CSGA 362 06 08), which provides that the coverage does not apply to bodily injury, property damage, or personal advertising injury caused by or arising out of, among other things, any actual or alleged violation of any building code, ordinance or statute.

Cincinnati reserves the right to deny coverage based on this exclusion to the extent that any of the alleged deficiencies with the Premise, such as the defective gate or other issues complained about in the underlying Complaint, are later demonstrated to constitute a violation of any building code, ordinance or statute.

IV.  **CONCLUSION**

Cincinnati agrees to provide a defense to PIP and JBMP in the Underlying Action, subject to a complete reservation of rights.  Cincinnati reserves the right to deny or limit coverage to the extent that one or more of the Cincinnati Policy exclusions apply to the claims and damages alleged in the Underlying Action.

The foregoing is not intended as a waiver, modification or alteration of any of the terms, conditions, limitations, endorsements or exclusions of any policy issued by Cincinnati, whether or not identified in this letter.  Cincinnati does not waive, and shall not be estopped from asserting, any defenses available under any Cincinnati policy or at law.  Any defense, investigation, claims handling, or other conduct by Cincinnati or its employees/agents or attorneys regarding this matter is subject to all the terms, conditions, limitations, endorsements or exclusions of the Cincinnati Policy and/or at law, and is undertaken subject to a full reservation of rights without any further obligation.

The conclusions set forth in this correspondence are based on the information gathered and the investigation undertaken, to date.  Such information and investigation will not waive or set aside any of the terms or conditions of the Cincinnati Policy, or policies issued to the named insured, or any other insured claiming coverage in this matter.  Nor will such review and evaluation of information or additional information, or material provided or obtained from any source, waive or set aside any policy conditions or positions taken in this letter or any other correspondence from us on this claim.

Cincinnati specifically reserves the right to bring an action to declare the obligations and responsibilities, if any, of the parties to the Cincinnati Policy issued to PIP and JBMP.

If you feel that we are incorrect in our assessment of the coverage issues or if you have questions, comments, or objections regarding the contents of this letter or desire to discuss further the content of this letter or the claim in general, please feel free to contact me.
Very truly yours,

*John Lucas*

John Lucas, AIC
Associate Manager
The Cincinnati Specialty Underwriters Insurance Company

cc:   RM Development Partners
      1541 Ridge Avenue
      Philadelphia, PA 19130

      15th Street Lighthouse LP
      1955 North 18th Street
      Philadelphia Pa 19121

The Plexis Group, LLC
21805 W. Field Pkwy, Suite 300
Deer Park, IL  60010
    Attn: Jonie Gould

JBMP Real Estate Group LLC
a/k/a JBMP Group
1133 East Columbia Avenue Suite 101
Philadelphia, PA 19125

PIP Property Management, LLC
a/k/a Princeton International Properties
4422 Route 27
Princeton, NJ 08528